******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JORGE BENITEZ *v.* COMMISSIONER
OF CORRECTION
(AC 41891)

Lavine, Bright and Sheldon, Js.

*Syllabus*

The petitioner sought a writ of habeas corpus, claiming that his trial counsel
had rendered ineffective assistance for failing to hire or to consult with
a defense expert in arson investigation before trial. The petitioner had
been convicted of various offenses in connection with his role in planning
and recruiting two brothers, J and F, to burn the shed of the victim, G,
with whom he quarreled over used car transactions. After G had removed
two cars from the petitioner's used car lot, the petitioner took various
actions that G interpreted as threats to his safety and his wife's safety.
G testified that the petitioner left two sealed envelopes with "funny
money" inside on G's lawn, indicating to G an intent to retaliate. When
he thereafter observed two men near his shed just before it burst into
flames, he fired a gun at the men as they fled, striking one man in the
arm. J sought treatment that evening in a Massachusetts hospital for a
gunshot wound to his arm; DNA from his blood was recovered outside
G's home. At the criminal trial, J testified that the petitioner had hired
him and F to burn the shed, had given them the gas can containing
gasoline to use, and had telephoned him twice the evening of the fire.
The state presented evidence that the DNA recovered from the saliva
on the envelopes left on G's lawn had come from the petitioner. The
state also presented the testimony of an expert, a state chemist, that
the accelerant used to start the fire was not gasoline, but a compound
often found in various substances used in the car repair business.
Defense counsel, who had not hired an arson investigation expert,
learned for the first time at trial, through the state's expert, that the
accelerant was not gasoline, after he had cross-examined G. Defense
counsel, because he had not known that the accelerant was a compound
that G may have used to repair autos in his shed, had not questioned
G regarding his access to such an accelerant to start the fire. The habeas
court denied the petition for a writ of habeas corpus. On the petitioner's
certified appeal to this court, *held* that the habeas court properly denied
the petitioner's petition for a writ of habeas corpus on the basis of his
failure to establish that his counsel's failure to hire or to consult with
a defense expert in arson investigation before trial prejudiced his
defense; the petitioner failed to prove that, if counsel had known before
trial that an organic compound other than gasoline, particularly a com-
pound used in auto repair, had been used to set fire to G's shed, his cross-
examination of G would have elicited sufficient evidence to establish
a reasonable probability that the result of the criminal trial would have
been different, the petitioner having failed to call G to testify at the
habeas trial to establish what G would or could have testified to on
cross-examination at the criminal trial had he been questioned about
the compound, and the state's other evidence establishing the petition-
er's guilt as the person who planned and recruited others to commit the
intentional burning of G's shed was overwhelming, including eyewitness
testimony from G and J and DNA evidence connecting J to the scene
on the night of the fire and the petitioner to the envelopes left on G's lawn.

Argued March 4—officially released May 12, 2020

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Hon. Edward J. Mullar-
key*, judge trial referee; judgment denying the petition;
thereafter, the court granted the petition for certifica-
tion to appeal, and the petitioner appealed to this
court. *Affirmed.*

*Vishal K. Garg*, assigned counsel, for the appellant (petitioner).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Anne F. Mahoney*, state's attorney, and *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. In this certified appeal from the denial of his petition for a writ of habeas corpus, the petitioner, Jorge Benitez, contends that the habeas court erred in rejecting his claim that he was deprived of the effective assistance of counsel in his underlying criminal trial. In that trial, the jury found the petitioner guilty of five criminal offenses in connection with his alleged role in planning and recruiting others to carry out the intentional burning of a shed owned by the complainant, Joseph Gionet, in Thompson. Those offenses included arson in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-111 (a) (4), conspiracy to commit arson in the second degree in violation of General Statutes §§ 53a-48 (a) and 53a-112 (a) (1) (A), criminal mischief in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-115 (a) (1), conspiracy to commit criminal mischief in the first degree in violation of §§ 53a-48 (a) and 53a-115 (a) (1), and inciting injury to persons in violation of General Statutes § 53a-179a. After the jury returned its guilty verdict, the trial court separately found the petitioner guilty, as alleged in a part B information, of being a persistent felony offender under General Statutes (Rev. to 2005) § 53a-40 (f). Thereafter, the trial court sentenced the petitioner to a total effective sentence of fifteen years of incarceration, execution suspended after thirteen years, followed by five years of probation. This court subsequently affirmed the petitioner's conviction on direct appeal. See *State* v. *Benitez*, 122 Conn. App. 608, 610, 998 A.2d 844 (2010).

Following his direct appeal, the petitioner commenced this habeas corpus action. On January 24, 2018, after twice amending his original habeas corpus petition, the petitioner was brought to trial before the habeas court on his second amended habeas corpus petition. After five days of evidence and posttrial briefing, the habeas court issued a memorandum of decision in which it denied the petition. The habeas court ruled that the petitioner had failed to prove either essential element of his claim of ineffective assistance of counsel under controlling state and federal case law enforcing the right to counsel provided by the sixth and fourteenth amendments. The habeas court subsequently granted the petitioner's petition for certification to appeal from its decision. This appeal followed.

A criminal defendant has a constitutional right to the effective assistance of counsel at his criminal trial. U.S. Const., amend. VI. This right is made applicable to the states through the due process clause of the fourteenth amendment. U.S. Const., amend. XIV. "In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that

counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) *Carneiro* v. *Commissioner of Correction*, 109 Conn. App. 513, 515, 952 A.2d 80, cert. denied, 289 Conn. 936, 958 A.2d 1244 (2008). "To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary skill and training in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 291 Conn. 830, 835, 970 A.2d 721 (2009). "It is well settled that [a] reviewing court can find against a petitioner on either ground, whichever is easier." (Emphasis omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 713, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

In this appeal, the petitioner claims error as to the habeas court's rulings rejecting both prongs of his ineffective assistance of counsel claim. After carefully reviewing the record before us, we conclude that the habeas court's denial of the petitioner's claim of ineffective assistance of counsel must be affirmed because the petitioner failed to establish the prejudice prong of that claim by proving that his counsel's failure to hire or consult with a defense expert in arson investigation before trial prejudiced his defense.

The petitioner's claim must be evaluated in light of the evidence presented at his trial. In that trial, the state claimed and sought to prove that the petitioner had hired two brothers from Massachusetts, Jorge Delgado and Francisco "Frankie" Delgado, to burn down the complainant's shed. He did so, it was claimed, to get back at the complainant for removing two cars from the petitioner's used car lot, one of which the complainant had left with the petitioner to be sold on consignment. After the two men argued about what the complainant had done, the complainant received a threatening phone call. Later that same day, he found two envelopes stuffed with "funny money" on the lawn outside of his house, which the petitioner had previously indicated to the complainant is a method that he uses to notify people who do not comply with his wishes; he then enlists friends from Massachusetts to "[take] care of his problems." The envelopes were

marked with the model years of the two cars the complainant had removed from the petitioner's lot. Put on guard by the petitioner's threat, and keeping an eye out for trouble, the complainant began to notice that, on several occasions, the petitioner drove by his house in different cars. Fearing that the petitioner might be planning to cause trouble at or near his house, and fearing for the safety of his wife, who came home from work late at night, the complainant began to wait outside the house in the dark, sometimes armed with a gun, as the hour of his wife's return approached. On one such night, he heard footsteps of persons coming onto his property, and then saw two men near his shed before a large fireball burst above them. Chasing the men into the street, with flames shooting high in the air above them, the complainant fired several shots in their direction, striking one of them in the arm. That man, Jorge Delgado, after setting the fire, fled to Worcester, Massachusetts, to receive medical treatment for his wound in an out of state hospital. Jorge Delgado testified at the petitioner's criminal trial that the petitioner had hired him and his brother Frankie to burn down the shed, had given them a gas can containing gasoline to do the job, and had spoken with him by telephone before and after setting the fire, when he called him initially to ensure that he could establish an alibi and, later, to confirm for him that the job was done. The state also presented telephone records confirming that the two phone calls described by Jorge Delgado, in fact, had been made, DNA evidence from blood recovered outside the complainant's house that showed that Jorge Delgado had been injured in that location on that evening, and hospital records that showed that Jorge Delgado had been treated for a gunshot wound at a Worcester hospital on the evening of the fire. In addition, the state presented DNA evidence, which proved that the saliva used to seal the two envelopes of "funny money" left on the complainant's lawn before the fire had come from the petitioner. Finally, as previously noted, a state expert chemist testified that the accelerant used to start the fire was not gasoline, but a medium boiling range petroleum distillate, a substance used in the car repair business, in paint thinner and degreasers.

The evidence at the habeas trial showed that defense counsel neither hired nor consulted with an expert in arson investigation before the start of trial. As a result, he did not learn that the fire had not been started with gasoline until the state's expert testified.

The petitioner bases his claim of prejudice on counsel's alleged deficient performance in declining to hire or to consult with an expert in arson investigation before trial, which caused him not to learn the type of accelerant used to start the fire before he cross-examined the complainant, who testified before the state's expert chemist. According to the petitioner, counsel's resulting lack of knowledge prevented him

from mounting an effective cross-examination of the complainant on the petitioner's alternative theory that the complainant, not the Delgado brothers, had started the fire using a medium boiling range petroleum distillate of the sort that the complainant may have used in his auto repair business and stored in his shed. The lack of such information, claims the petitioner, compromised counsel's ability to cross-examine the complainant concerning his own access to and likely use of such an accelerant to set the fire.

After thoroughly reviewing the entire record before the habeas court, we conclude that its ruling must be affirmed because the petitioner failed to establish the prejudice prong of his claim.

On this score, we note initially that, for the petitioner's claim of prejudice to be successful, he had to prove that, if counsel had known before trial that an organic compound other than gasoline, particularly a medium boiling point petroleum distillate, had been used to set fire to the complainant's shed, his cross-examination of the complainant would have elicited sufficient evidence to establish a reasonable probability that the result of his criminal trial would have been different. There are two reasons why the petitioner failed to prove his claim of prejudice in this case.

First, the petitioner failed to call the complainant to testify at the habeas trial, or otherwise to establish what the complainant would or could have testified to on cross-examination, had he been questioned about his access to and possible use of such medium boiling range petroleum distillates to set fire to his own shed. It is axiomatic that a habeas petitioner who claims prejudice based on counsel's alleged failure to present helpful evidence from a particular witness, must call that witness to testify before the habeas court or otherwise prove what the witness would or could have stated had he been questioned at trial, as the petitioner claims he should have been. See, e.g., *Taft* v. *Commissioner of Correction*, 159 Conn. App. 537, 554, 124 A.3d 1 (petitioner failed to prove prejudice when he "did not offer evidence regarding how [the witnesses] would have testified if they had been cross-examined [differently]"), cert. denied, 320 Conn. 910, 128 A.3d 954 (2015). In this case, no such showing was even attempted, much less made.

Second, apart from the petitioner's failure to establish what the complainant would have testified to had he been cross-examined as the petitioner suggested, the state's other evidence establishing the petitioner's guilt as the person who planned and recruited others to commit the intentional burning of the complainant's shed, as summarized above, was overwhelming. Two independent eyewitnesses testified to what they had seen and done on the evening of the incident. One, the complainant, testified to his long running dispute with

the petitioner concerning their dealings about the repair and sale of cars, including their recent dispute about his removal of two cars from the petitioner's used car lot, one of which had been left to be sold on consignment. The petitioner reportedly had an angry, threatening reaction to the cars' removal, and the threat had involved unspecified payback to the complainant by the petitioner's friends from Massachusetts. The complainant had then seen the petitioner drive by his house on several occasions, and had found two envelopes on his lawn stuffed with "funny money" and bearing the model years of the two cars he had removed from the petitioner's lot. On notice about the petitioner's plans for retribution, he kept watch outside of his house late at night when his wife was due to return home from work. It was in keeping such a lookout that he spotted two men near his shed when the shed went up in flames; he shot one of them with his rifle as he chased them off. The second eyewitness, Jorge Delgado, confirmed the complainant's testimony by testifying that he was shot and injured on the evening of the fire when he and his brother Frankie, two residents of Massachusetts who had been hired by the petitioner for that purpose, went to the complainant's house with a gas can and burned down his shed before shots rang out and he was struck in the arm by a bullet. The evidence confirmed that Jorge Delgado's blood had been left at the scene of the fire where the complainant had shot him, he had been treated for his injuries on that evening in a Worcester hospital, and he had twice telephoned the petitioner on that evening, once before and once after setting the fire. Finally, the evidence showed that the threatening envelopes filled with "funny money" had been sealed shut by the petitioner. In light of this wealth of highly damning evidence, there is no reasonable probability that, if his trial counsel had conducted his defense as the petitioner claims he should have, the result of the petitioner's criminal trial would have been different.

Accordingly, we affirm the denial of the petitioner's habeas corpus petition on the basis of his failure to establish the prejudice prong of his ineffective assistance of counsel claim.

The judgment is affirmed.

———————————————