******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The petitioner, who had been convicted, following a jury trial, of felony
murder, sought a writ of habeas corpus, claiming that his trial counsel,
J, had provided ineffective assistance and that his rights to due process
and to a fair trial had been violated by the prosecutor's failure to disclose
material evidence that was favorable to the defense. Following a hearing,
the habeas court denied the petition. Thereafter, the habeas court denied
the petition for certification to appeal, and the petitioner appealed to
this court. *Held* that the habeas court did not abuse its discretion in
denying the petition for certification to appeal, the petitioner having
failed to demonstrate that his claims involved issues that were debatable
among jurists of reason, that a court could resolve the issues in a
different manner or that the questions raised were adequate to deserve
encouragement to proceed further: this court declined to review the
petitioner's claim that the habeas court deprived him of his statutory
and constitutional rights in failing to admit into evidence or to consider
the transcript of his underlying criminal trial, as the petitioner did not
raise any claims relating to the habeas court's treatment of the criminal
trial transcript in his petition for certification to appeal; moreover, based
on the underlying facts as found by the habeas court, this court con-
cluded that the habeas court properly found that the petitioner failed
to establish that J rendered ineffective assistance, as that court correctly
determined that the petitioner failed to establish prejudice on the basis
of J's failure to explore the condition of the victim's body when cross-
examining the state's main witness, B, as the petitioner failed to present
B as a witness at the habeas trial, or on the basis of J's failure to consult
and call as a witness a forensic expert as, although the petitioner asserted
that an expert could have provided important information to his counsel,
he failed to state how such information would have impacted the case,
or on the basis of J's failure to follow up on bloodstains found in the
victim's car, the petitioner having failed to link the victim's car and the
bloodstains in it to the murder, and this court declined to review the
petitioner's claim that J failed to follow up on the handling of the
victim's car by the police, as the claim was not distinctly raised before
or addressed by the habeas court; furthermore, this court concluded
that the habeas court properly determined that there was no violation
of *Brady* v. *Maryland* (373 U.S. 83), because, although the prosecutor
failed to disclose to the petitioner that DNA evidence obtained from
bloodstains in the victim's car generated a match to a convicted offender,
the petitioner failed to establish a connection between the murder and
those bloodstains and thus failed to show that evidence of that match
was material to his defense.

Argued January 26—officially released April 26, 2022

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Newson, J.*; judgment
denying the petition; thereafter, the court denied the
petition for certification to appeal, and the petitioner
appealed to this court. *Appeal dismissed.*

*Katharine S. Goodbody*, assistant public defender,
for the appellant (petitioner).

*Ronald G. Weller*, senior assistant state's attorney,
with whom, on the brief, were *Joseph T. Corradino*,

state's attorney, and *Emily Trudeau*, assistant state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Marquis Jones, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal, (2) deprived him of his constitutional and statutory rights by failing to admit into evidence or consider the transcripts of the underlying criminal trial, (3) improperly concluded that his trial counsel did not provide ineffective assistance, and (4) improperly concluded that there were no violations of *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), at his underlying criminal trial. We conclude that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal and, therefore, dismiss the appeal.

This court set forth the following facts, which the jury reasonably could have found, in the petitioner's direct appeal from his conviction. "On the evening of December 26, 2002, the eighteen year old victim, accompanied by his cousin, Sam Moore, attended a party at a club in Bridgeport. The [petitioner] was at the club at the same time as the victim and Moore. After leaving the club, the victim and Moore went to a nearby restaurant. The [petitioner], who was armed with a gun, arrived at the same restaurant at approximately 1 a.m. While there, the [petitioner] learned that the victim and Moore were interested in purchasing marijuana. The [petitioner] told an acquaintance, Gary Browning, that the victim and Moore had money and that he wanted to rob them. Browning arranged to sell marijuana to the victim and led him to a nearby backyard to complete the sale. Thereafter, the [petitioner] approached the victim from behind and stated: 'You know what time it is, run that shit.' As Browning walked away from the victim, the [petitioner] shot the victim in the back of the head and took money and drugs from him. The gunshot caused the victim's death. The victim's body was found on the snow coated ground the next morning." (Footnote omitted.) *State* v. *Jones*, 135 Conn. App. 788, 791, 44 A.3d 848, cert. denied, 305 Conn. 925, 47 A.3d 885 (2012).

The petitioner was arrested on June 4, 2008. On May 28, 2010, following a jury trial, the petitioner was convicted of felony murder. He was sentenced to a total effective sentence of forty years of incarceration. Following a direct appeal, the judgment of conviction was affirmed by this court. Id., 790.

The present habeas proceeding was commenced in May, 2013, and, on May 10, 2019, the petitioner filed a three count, third amended petition for a writ of habeas corpus. The first count included a number of claims of

ineffective assistance of counsel, three of which are at issue in this appeal. The second and third counts each alleged that his rights to due process and a fair trial were violated by the prosecutor's failure to disclose material evidence that was favorable to the defense. A trial was held over the course of two days, on August 27, 2018, and June 4, 2019. On November 26, 2019, the habeas court, *Newson*, *J.*, issued a memorandum of decision in which it denied the petitioner's habeas petition.

The petitioner subsequently filed a petition for certification to appeal, which the court also denied. This appeal followed. Additional facts and procedure will be set forth as necessary.

I

The petitioner first claims that the habeas court abused its discretion in denying his petition for certification to appeal from the court's judgment denying his petition for a writ of habeas corpus. We disagree.

General Statutes § 52-470 (g) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought by or on behalf of a person who has been convicted of a crime in order to obtain such person's release may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or, if such judge is unavailable, a judge of the Superior Court designated by the Chief Court Administrator, to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

"As our Supreme Court has explained, one of the goals our legislature intended by enacting this statute was to limit the number of appeals filed in criminal cases and hasten the final conclusion of the criminal justice process . . . . [T]he legislature intended to discourage frivolous habeas appeals. . . . [Section] 52-470 [g] acts as a limitation on the scope of review, and not the jurisdiction, of the appellate tribunal. . . .

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the [disposition] of his [or her] petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he [or she] must demonstrate that the denial of his [or her] petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he [or she] must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim

involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Footnote omitted; internal quotation marks omitted.) *Whistnant* v. *Commissioner of Correction*, 199 Conn. App. 406, 414–15, 236 A.3d 276, cert. denied, 335 Conn. 969, 240 A.3d 286 (2020).

For the reasons set forth in parts II, III, and IV of this opinion, we conclude that the petitioner has failed to demonstrate that his claims are debatable among jurists of reason, a court could resolve the issues in a different manner, or the questions are adequate to deserve encouragement to proceed further. Thus, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

II

Turning to the merits of the petitioner's first substantive claim, the petitioner claims that the habeas court deprived him of "his constitutional and statutory rights to the opportunity to be heard" by failing to admit into evidence or consider the transcript of the underlying criminal trial. The respondent, the Commissioner of Correction, contends, inter alia, that this claim is not reviewable. We agree with the respondent.

The following additional procedural history is relevant to our resolution of this claim. On the first day of the habeas trial, August 27, 2018, the petitioner's habeas counsel offered the underlying criminal trial transcript as a full exhibit, and the respondent's attorney objected, noting that the transcript, which was saved on a flash drive, did not appear to be certified and the paper copy offered by the petitioner had notes on it. The respondent's attorney told the court that if there was a brief recess she would be able to review the flash drive to determine whether the transcript was certified. The court advised the parties that it planned a lunch recess to afford them review time. One of the attorneys, however, had to attend another hearing in the afternoon; therefore, the trial was adjourned without a resolution of the transcript issue. On June 4, 2019, the second, and last, day of the trial, the petitioner's habeas counsel "offer[ed] the expanded record pursuant to . . . Prac-

tice Book § 23-36,[1] including the transcripts of the criminal case"; (footnote added); and the court stated that it would accept the transcripts as part of the "underlying record."[2] In the court's memorandum of decision denying the petition for a writ of habeas corpus, the court noted that, "[s]trangely, although submitted as an ID exhibit . . . the transcript from the underlying criminal trial was never offered as a full exhibit at the habeas trial" and further noted that the transcript "likely could have offered some clarification about exactly what happened."

On December 10, 2019, after the habeas court denied his petition for a writ of habeas corpus, the petitioner filed a petition for certification to appeal. Although the petitioner set forth numerous grounds on which he proposed to appeal, he did not in any way implicate the court's treatment of the criminal trial transcript. The court denied the petition for certification to appeal on December 11, 2019. On January 28, 2020, the petitioner appealed to this court. On March 4, 2020, the petitioner filed a motion for articulation and a motion for rectification of appeal, arguing therein that the "habeas court erroneously determined that the underlying transcript of the criminal trial was not in evidence and, therefore, [the court] failed to consider the transcript [in] making its decision." On May 29, 2020, the habeas court denied these motions, noting that "the criminal transcript was not a full exhibit." On August 6, 2020, the petitioner filed with this court two motions for review with respect to the habeas court's decisions on those motions. This court granted the motion to review the decision on the petitioner's motion for articulation and ordered the habeas court to articulate whether it considered any portion of the criminal trial transcript when rendering its decision. The habeas court, in its responsive articulation, explained that "the petitioner never entered the criminal trial transcript as a full exhibit. Since the transcripts remained an exhibit for ID only . . . [the court] would not have considered the exhibit in rendering the memorandum of decision following the trial. To the extent the parties referenced said transcript in their briefs, the court simply accepted those as arguments of the parties based on the evidence and full exhibits that were submitted at trial." At no point did the petitioner seek to amend his petition for certification to appeal to include arguments related to the court's treatment of the criminal trial transcript.

Now, on appeal, the petitioner claims that, because "[t]he underlying transcript was offered by counsel for the petitioner, was not objected to by the respondent's counsel, and was relied on both in questioning witnesses during the habeas trial and in the posttrial briefs of the parties," the court's "[f]ailure to admit the transcript denied [the petitioner] . . . his due process right to a meaningful opportunity to be heard. And, failure to consider any portion of the underlying criminal tran-

script also denied [the petitioner] his due process rights to be heard." In response, the respondent argues that, inter alia, this claim is not reviewable because "it was not raised as a ground of error in the petition for certification to appeal."

"As our standard of review set forth [in part I of this opinion] makes clear, an appeal following the denial of a petition for certification to appeal from the judgment denying a petition for a writ of habeas corpus is not the appellate equivalent of a direct appeal from a criminal conviction. Our limited task as a reviewing court is to determine whether the habeas court abused its discretion in concluding that the petitioner's appeal is frivolous. Thus, we review whether the issues for which certification to appeal was sought are debatable among jurists of reason, a court could resolve the issues differently or the issues are adequate to deserve encouragement to proceed further. . . . Because it is impossible to review an exercise of discretion that did not occur, we are confined to reviewing only those issues which were brought to the habeas court's attention in the petition for certification to appeal." (Citation omitted.) *Tutson* v. *Commissioner of Correction*, 144 Conn. App. 203, 216, 72 A.3d 1162, cert. denied, 310 Conn. 928, 78 A.3d 145 (2013); see id., 215–17 (declining to review claim that "court improperly failed to read all of the exhibits introduced at the habeas proceeding . . . [b]ecause the petitioner did not raise the claim when asking the court to rule on his petition for certification to appeal"); see also *Schuler* v. *Commissioner of Correction*, 200 Conn. App. 602, 610–11, 238 A.3d 835 (2020), cert. denied, 336 Conn. 905, 243 A.3d 1180 (2021).

Further, "[i]t is well established that a petitioner cannot demonstrate that the habeas court abused its discretion in denying a petition for certification to appeal if the issue raised on appeal was never raised before the court at the time that it considered the petition for certification to appeal as a ground on which certification should be granted." (Internal quotation marks omitted.) *Whistnant* v. *Commissioner of Correction*, supra, 199 Conn. App. 416.

In the present case, the petitioner did not raise any claims related to the court's treatment of the trial transcript in his petition for certification to appeal. He explains that "[t]he issue was raised and addressed in the posttrial motions for articulation and rectification and in the motions for review of the decisions on these motions," which provided the court with "the opportunity to address this claim." The petitioner asserts that the claim is reviewable because "[t]he court was given the opportunity to address this issue through the motions . . . ." These arguments, however, ignore the statutory nature of habeas appeals. "Section 52-470 (g) conscribes our appellate review to the issues presented in the petition for certification to appeal . . . ." *Whist-*

*nant* v. *Commissioner of Correction*, supra, 199 Conn. App. 418. The petitioner's contentions are unavailing, and he cannot demonstrate that the habeas court abused its discretion in denying the petition for certification to appeal on this ground.

### III

The petitioner's second substantive claim on appeal is that the court erroneously concluded that he failed to establish that his trial counsel, Attorney Jeffrey Beck, rendered ineffective assistance. Specifically, the petitioner claims that his trial counsel failed (1) to attack Browning's testimony with respect to the condition of the victim's body, (2) to hire a forensic expert, and (3) to conduct a timely and thorough investigation of the case and asserts that, "if [defense counsel] had not failed to take the actions discussed herein, it is probable that the outcome would have been different." We disagree.

"[As it relates to the petitioner's substantive claims] [o]ur standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled." (Internal quotation marks omitted.) *Mourning* v. *Commissioner of Correction*, 169 Conn. App. 444, 449, 150 A.3d 1166 (2016), cert. denied, 324 Conn. 908, 152 A.3d 1246 (2017). "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . . With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citation omitted; internal quotation marks omitted.) *Schuler* v. *Commissioner of Correction*, supra, 200

### A

We first address the petitioner's contention that his trial counsel failed to explore the condition of the victim's body when cross-examining Browning, the state's main witness against the petitioner in the criminal trial.

The following additional procedural history is relevant to our resolution of this claim. At the habeas trial, the exhibits from the criminal trial, which included pictures of the crime scene and the victim, were entered as full exhibits. The pictures show the victim lying face down in the snow, with clothing partially removed, and surrounded with footprints. In addition, Joette Devan, a detective who responded to the crime scene, testified that the victim was lying face down and that there were footprints in the snow around the body. The petitioner also presented evidence, in the form of expert testimony, that the position of the victim's body indicated that it had been moved after the murder occurred.[3]

The petitioner presented expert testimony of Attorney John Watson. When Watson was asked about the footprints around the victim's body, he testified that "[s]ome of [the footprints] were identified as those of Mr. Browning because of the footwear he himself said he was wearing, and some were identified as those of the victim because they matched the type of footwear the victim was wearing." The petitioner's habeas counsel then asked, "[I]f you as a defense attorney . . . have a crime scene where the victim has been rolled and his clothes have been pulled off him . . . to some degree, what would you do with that?" Watson responded, "I think that's something that the forensic expert could help defense counsel to bring to the jury's attention through cross-examination of the state's witnesses that the footprints around the body were those of Mr. Browning. So, it's a reasonable inference that, in fact, he was the person who tampered with the body after the shooting."

The petitioner's trial counsel also testified at the habeas trial. The case was scheduled for trial at the time when trial counsel was appointed to represent the petitioner. He testified that his defense theory was "that [the petitioner] had nothing to do with the incident at all, wasn't present when [the victim] was shot, and wasn't aware of what was going on." He further testified that his approach in cross-examining Browning was to attack Browning's testimony because, according to trial counsel, "[Browning's] testimony . . . was very weak" and "very incredulous." The petitioner's trial counsel testified further that he questioned Browning about footprints found around the body and that Browning admitted that the footprints were his own. Trial counsel recalled that, in his closing argument at trial, he mentioned that the victim's body may have been moved after

the shooting. Further, on inquiry from the respondent's counsel, trial counsel agreed that pursuing a line of questioning as to what may have happened to the victim's body after the shooting would not have been relevant to the defense that the petitioner was not at the scene and had nothing to do with the murder. Finally, trial counsel conceded that the state never claimed that the petitioner's footprints were at the scene of the crime. The petitioner never called Browning as a witness at the habeas trial.

In denying the petitioner's amended petition for a writ of habeas corpus, the habeas court concluded that the petitioner's failure to present Browning as a witness at the habeas trial was fatal to his claim, citing *Nieves* v. *Commissioner of Correction*, 51 Conn. App. 615, 623–24, 724 A.2d 508, cert. denied, 248 Conn. 905, 731 A.2d 309 (1999), which held that "[t]he failure of the petitioner to offer evidence as to what [the witnesses] would have testified is fatal to his claim," as, without the evidence, the court was "unable to conclude that he was prejudiced."

On appeal, the petitioner asserts that "[a] review of the photograph of the [victim's] body indicates that it 'most likely ha[d] been moved at some point after the injury occurred' " and that Browning's footprints were " 'abundant' around the victim's body." Thus, he argues that, because "the state had a weak case, it is reasonably probable that the jury would have found reasonable doubt had [his trial counsel] adequately attacked [Browning's] testimony." The respondent maintains that the habeas court correctly determined that prejudice could not be assessed given the fact that the petitioner did not call Browning as a witness at the habeas trial. In response, the petitioner asserts that, "[i]f [Browning] had testified at the habeas trial, his answers would not have changed the fact that [the petitioner's trial counsel] failed to bring to the jury's attention the discrepancies in [Browning's] version of the shooting and the physical evidence." Accordingly, it is the petitioner's position that "how [Browning] would have answered is irrelevant and was not required" because "the failure of [trial counsel's] cross-examination of [Browning] was the failure to challenge his testimony with the physical evidence." We agree with the respondent.

"It is axiomatic that a habeas petitioner who claims prejudice based on counsel's alleged failure to present helpful evidence from a particular witness, must call that witness to testify before the habeas court or otherwise prove what the witness would or could have stated had he been questioned at trial, as the petitioner claims he should have been." *Benitez* v. *Commissioner of Correction*, 197 Conn. App. 344, 351, 231 A.3d 1285, cert. denied, 335 Conn. 924, 233 A.3d 1091 (2020); see id., 350–51 ("petitioner failed to call the complainant to testify at the habeas trial, or otherwise to establish what

the complainant would or could have testified to on cross-examination, had he been questioned about his access to and possible use" of chemicals involved in underlying arson and, therefore, could not show prejudice); see also *Taft* v. *Commissioner of Correction*, 159 Conn. App. 537, 554, 124 A.3d 1 (petitioner failed to prove prejudice when he "did not offer evidence regarding how [the witnesses] would have testified if they had been cross-examined [differently]"), cert. denied, 320 Conn. 910, 128 A.3d 954 (2015); *Nieves* v. *Commissioner of Correction*, supra, 51 Conn. App. 623 (petitioner's failure "to offer evidence as to what [witnesses] would have testified is fatal to his claim"). In order for the habeas court to assess the claim that the petitioner's trial counsel did not properly cross-examine Browning, the petitioner needed to call Browning as a witness at the habeas trial or otherwise demonstrate how Browning would have testified had his cross-examination been conducted as now suggested by the petitioner.

Accordingly, we conclude that the habeas court properly determined that the petitioner failed to establish prejudice, and, therefore, the court did not abuse its discretion in denying the petition for certification to appeal as to this claim.

B

The petitioner next claims that his trial counsel failed to consult and call as a witness a forensic expert. Specifically, in this third claim he asserts that a forensic expert could have (1) "told [trial counsel] that the victim's body had been moved subsequent to the shooting," (2) "testified as to the relevance and importance of the shoe print that was approximately [twenty] feet from the victim," and (3) "told [trial counsel] the possible significance and could have testified regarding the victim's car with the bloodstained seats." According to the petitioner, a forensic expert "would have bolstered the idea that the state's version of what happened here is not trustworthy." (Internal quotation marks omitted.) The petitioner, however, has failed to demonstrate that he was prejudiced by his trial counsel's failure to consult and call a forensic expert.

In addition to the evidence discussed in part III A of this opinion, the petitioner presented the following evidence. Devan, a detective involved in the investigation, testified that the victim's car keys were next to the victim's body and that the victim's car was located nearby. Devan testified that two of the car's seats had what appeared to be bloodstains on them and that the car was towed to the police department for further investigation. The petitioner presented evidence that the two stains found on the car seats were human blood and that the police removed the bloodstained fabric from the vehicle for DNA testing, which occurred in 2003 and ruled out the victim as the source of the blood.

Michael Bourke, a forensic science examiner at the Department of Emergency Services and Public Protection, testified that DNA testing on the bloodstains resulted in several profiles that were entered into the Combined DNA Index System (CODIS) database[4] "in order to search against other forensic profiles and the profiles from the offenders that are included [in the database] in hopes of furthering the investigation." Bourke also testified that "a match was generated to a convicted offender in this case" on January 12, 2009, identifying "Rafail E. Ferrer" as having DNA in the system that matched the sample from the victim's car.

The petitioner also established that his trial counsel did not hire or consult a forensic expert in the present case, and he presented testimony from Peter Valentin, a lecturer at the Forensic Science Department of the University of New Haven, as an expert in crime scene forensic science. Valentin testified, on reviewing a photograph of the victim's body at the crime scene that was a full exhibit in the criminal trial, that there had been "some movement after the injury" and "the [victim] most likely ha[d] been moved at some point after the injury occurred."[5] Valentin also briefly testified about a shoe print containing a bloodstain that was approximately twenty feet from the victim. When asked if the shoe print was "something that would be significant in trying to resolve this crime," Valentin responded that "[t]he existence of that bloodstain at such a distance from . . . where the injury occurred strongly suggests relevance" and provided several theories as to how the bloodstained footprint came to be.[6]

When asked about what he would have done if hired by the petitioner's trial counsel, Valentin said that he "would have advised [trial] counsel . . . that the automobile is a relevant item of physical evidence that needs to be safeguarded and searched until such time as . . . you can determine that there's nothing of relevance inside the vehicle." With respect to the bloodstains in the victim's car, Valentin provided suggestions only as to how he would have investigated the source of the blood (i.e., by interviewing the person whose DNA was matched with one of the bloodstains).

The habeas court determined that the petitioner failed to establish prejudice and provided that, "[a]lthough the petitioner did present the testimony of . . . Valentin as an expert in crime scene forensic investigation, his testimony was neither compelling nor enlightening. He was not at the scene of the crime and did not examine any of the actual physical evidence from the scene. He also did not speak directly to anyone who was present at the scene. In fact, from the best the court can determine, he only reviewed photographs and reports from the crime scene, from which he generated opinions of possible alternative meanings to the evidence or alternative avenues of investigation that he would have

advised defense counsel to pursue. What was wholly lacking, however, were any concrete scientific or factual findings that undermined the jury's determination of guilt in this case."

We agree with the habeas court's conclusion that the petitioner failed to show that he was prejudiced by the failure of his trial counsel to consult or hire a forensic expert. At best, Valentin's testimony provided thoughts on how he would have investigated the crime scene. With respect to the condition of the victim's body, Valentin's testimony merely demonstrated that the body may have been moved slightly, which is consistent with the state's theory that Browning and the petitioner robbed the victim after he had been incapacitated.[7] With respect to the bloodstained footprint, Valentin testified only that it might be relevant without explaining why. Finally, with respect to the bloodstains in the victim's car, Valentin merely suggested that the car should have been investigated and the person whose DNA matched with one of the bloodstains should have been interviewed, but the petitioner did not provide any information concerning what evidence these two actions would have unearthed.[8] Further, although the petitioner asserts that an expert could have given important information to his trial counsel, he failed to state how such information would have impacted the case. None of the petitioner's evidence, especially in light of the court's determination that the expert's testimony "was neither compelling nor enlightening," demonstrates a reasonable probability that, had trial counsel hired an expert, the outcome of the proceedings would have been different. See *Schuler* v. *Commissioner of Correction*, supra, 200 Conn. App. 617.

Accordingly, we conclude that the habeas court properly determined that the petitioner failed to establish prejudice and, therefore, did not abuse its discretion by denying the petition for certification to appeal as to this claim.

C

The petitioner's final claim of ineffective assistance is that his trial counsel failed to conduct a timely and thorough investigation. Specifically, the petitioner argues that his trial counsel should have followed up on the police's "handling of the victim's car" and the bloodstains found inside the car. We address each specific allegation separately.

1

The petitioner argues that his trial counsel should have investigated what happened to the victim's car after it was in police custody and that, if his trial counsel had done so, he would have discovered relevant information supporting the claim of inadequate police investigation and "thereby establish[ing] reasonable doubt."[9] The respondent argues, inter alia, that this claim is not

reviewable because it was not (1) raised in the habeas petition, (2) addressed in the petitioner's posttrial brief, and (3) addressed by the habeas court in its memorandum of decision denying the petition for a writ of habeas corpus. We agree with the respondent.

In the petition for a writ of habeas corpus, the petitioner alleges that his trial counsel rendered deficient performance because, inter alia, "[h]e failed to conduct a timely and thorough investigation." Although the petitioner specifically references the failure of his trial counsel "to follow up on the information regarding the bloodstain[s] on the seat[s] of the victim's car that was seized by the police at the time of the crime," he did not include any allegation that his trial counsel was ineffective for failing to investigate what happened to the car after it entered police custody. In his posttrial brief, the petitioner, with respect to the argument that his trial counsel failed to conduct a timely and thorough investigation, argued only that his trial counsel failed to "pursue information regarding the bloodstains" and failed to "pursue the issue of the blood swabbings." Unsurprisingly, the habeas court did not address any claim that the petitioner's trial counsel should have investigated the police's "handling of the victim's car."

"It is well settled that this court does not consider claims not raised in the habeas court." *Toles* v. *Commissioner of Correction*, 113 Conn. App. 717, 730, 967 A.2d 576, cert. denied, 293 Conn. 906, 978 A.2d 1114 (2009); see id., 729–30 (claim of ineffective assistance was not reviewed because it was not included in operative petition or posttrial brief and was not ruled on by habeas court). In addition, a claim is not reviewable when "not raised sufficiently in the habeas court." Id., 730; see also id. (specific claim of ineffective assistance not reviewed because habeas court considered only "broad allegation concerning [attorney's] 'failure to investigate' "). Further, "[i]t is well settled that this court is not bound to consider any claimed error unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Walker* v. *Commissioner of Correction*, 176 Conn. App. 843, 857–58, 171 A.3d 525 (2017); see id. (due process claim deemed abandoned because not addressed in posttrial briefing and not addressed by habeas court).

In the present case, given that this particular claim was never distinctly raised before or addressed by the habeas court, we decline to review this claim.

2

With respect to the petitioner's claim that his trial counsel "failed to follow up on information regarding bloodstains on the seat[s] of the victim's vehicle that were seized by the police at the time of the crime," the

habeas court determined that the petitioner failed to make the required showing of prejudice.[10] Specifically, the court stated: "[T]he petitioner has failed to present any evidence that the victim's vehicle, or anything inside of it, bore any material relationship to the crime. There appears to be no dispute that the victim, [Browning, and the petitioner] drove to the scene in an unrelated vehicle, that the keys to the victim's car were found near his body, or that the victim's car was locked when the police later located it. Other than the fact that these two blood samples were inside the victim's vehicle, the petitioner has provided no rational connection between them and [the victim's] murder. Finally, while Ferrer was identified as the likely source of one of the blood-stains, the petitioner has provided no credible evidence establishing when that sample was deposited in the car or placing Ferrer even within the state of Connecticut at the time of the crime. Therefore, even if the court were to assume that counsel should have followed up on this line of inquiry independently, the petitioner did not suffer any prejudice, because the information is irrelevant to the case." (Footnote omitted.) The court also emphasized that the petitioner's own testimony at the habeas trial "supports the irrelevance of anything found inside of [the victim's] car," as the petitioner never mentioned the victim's car or any unknown individual in his testimony about the night of the murder.

On appeal, the petitioner argues that the bloodstains inside the car were relevant because the police obtained a warrant to inspect the car and had the bloodstains tested for DNA, determining that the blood was not the victim's. Further, the petitioner asserts that it was relevant because his forensic science expert testified at the habeas trial that "who was in [the victim's car] with [the victim], what happened there, that's all a matter for investigation." The respondent argues that the petitioner cannot show prejudice because he failed to link the car and the bloodstains in it to the murder. We agree with the respondent.

The petitioner's argument requires us to assume that, because the car was within the vicinity of the murder and because the car had blood in it that matched with someone in the CODIS system, it was somehow associated with the murder. Without more evidence, however, we cannot so assume. Given the habeas court's findings, namely, that the victim arrived at the scene in a different vehicle, the keys to the vehicle were found on the victim's body, and the car was found locked, and given the fact that the petitioner presented no evidence connecting Ferrer to the murder—in fact, the petitioner presented no evidence about Ferrer whatsoever aside from the "hit notification" that included his name—it would be impossible to determine that, had the petitioner's trial counsel followed up on the bloodstains and subsequently procured the "hit notification," the criminal trial could have had a different outcome. See *Holley*

v. *Commissioner of Correction*, 62 Conn. App. 170, 175, 774 A.2d 148 (2001) ("The burden to demonstrate what benefit additional investigation would have revealed is on the petitioner. . . . [See] *Nieves* v. *Commissioner of Correction*, [supra, 51 Conn. App. 624] (petitioner could not succeed on claim of ineffective assistance on basis of counsel's failure to conduct proper investigation in absence of showing that he was prejudiced by counsel's failure to interview witnesses) . . . ." (Citation omitted.)).

Accordingly, we conclude that the habeas court properly determined that the petitioner failed to prove that he was prejudiced and, therefore, did not abuse its discretion by denying the petition for certification to appeal as to this claim.

## IV

The petitioner next claims that his rights to due process and to a fair trial were violated by the prosecutor's failure to disclose material evidence that was favorable to the defense in accordance with *Brady* v. *Maryland*, supra, 373 U.S. 83. Specifically, he claims that the state failed to disclose (1) exculpatory DNA evidence and (2) a transcript from a separate criminal proceeding that would have served as impeachment evidence. We address each of the petitioner's claims in turn.

### A

The petitioner first claims that the state improperly failed to provide the defense with "[e]vidence that another convicted felon's blood was in the car of the victim" in violation of *Brady* v. *Maryland*, supra, 373 U.S. 83. We disagree.

At the habeas trial, Bourke, the forensic examiner, testified that the "hit notification," which identified Ferrer as a DNA match with a sample taken from one of the car seat bloodstains, was sent to the agencies that investigated and prosecuted the crime, specifically, the police department, the prosecutor, and the major crimes unit. The habeas court determined that "[t]here was no evidence that [the petitioner's trial counsel] ever received a copy of the hit notification form or that he was aware of its existence."

In denying the petitioner's amended petition for a writ of habeas corpus, the habeas court determined that "the petitioner cannot establish a reasonable probability that this evidence would have had any impact on the outcome of his case or the establishment of a defense theory," noting, "the petitioner has not established any reasonable connection between the bloodstains on the seat[s] and the victim's murder, nor has he placed . . . Ferrer near the scene of the crime."

On appeal, the petitioner argues that the DNA match was material because "the fact that another person's blood was in the vehicle" "undermines [Browning's]

version of the crime," but he does not elaborate on how this information undermines Browning's account. The respondent argues that "the petitioner has failed to establish that the blood evidence was material," as (1) the blood was not at the crime scene but was in the victim's locked car some distance from the crime scene, (2) the blood was dry, (3) the victim only recently had purchased the car, and (4) the petitioner did not present testimony from Ferrer nor did he present any evidence linking Ferrer to the crime. We agree with the respondent.

We first set forth the standard of review applicable to *Brady* claims. "As set forth by the United States Supreme Court in *Brady* v. *Maryland*, supra, 373 U.S. 87, [t]o establish a *Brady* violation, the [defendant] must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the [defendant], and (3) it was material [either to guilt or to punishment]. . . . Whether the [defendant] was deprived of his due process rights due to a *Brady* violation is a question of law, to which we grant plenary review." (Internal quotation marks omitted.) *State* v. *Bryan*, 193 Conn. App. 285, 315, 219 A.3d 477, cert. denied, 334 Conn. 906, 220 A.3d 37 (2019).

"Under the last *Brady* prong, the evidence must have been material to the case, such that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. . . . The mere possibility that the undisclosed information might have helped the defense or might have affected the outcome of the trial does not meet the materiality standard. . . .

"The favorable evidence must cast the whole case in a different light. It is not enough for the defendant to show that the undisclosed evidence would have allowed the defense to weaken or destroy a particular prosecution witness or item of evidence to which the undisclosed evidence relates." *State* v. *Rosa*, 196 Conn. App. 480, 503–504, 230 A.3d 677, cert. denied, 335 Conn. 920, 231 A.3d 1169 (2020); see id., 504, 506 (CODIS match with DNA found on sweatshirt was not material because there was no testimony that person who committed crime was wearing sweatshirt, "the sweatshirt was not found at the actual crime scene but more than half a block away," "[t]here [wa]s no evidence to indicate how long the sweatshirt had been there or that it was even present when the police first responded to the crime scene," there was no other evidence connecting sweatshirt to crime, and petitioner could not connect person identified in CODIS match to crime).

In the present case, we agree with the habeas court that the petitioner has failed to show that the CODIS match was material to his defense. The car that contained the bloodstains was not found at the crime scene but on a nearby street. There is no evidence that the

victim or anyone else associated with the murder was in or near the car that night. There is no evidence establishing how long the car had been parked there. There is no indication that the victim's murder is connected to the victim's car or that the blood was left during or as a result of the murder—indeed, there was no evidence to suggest that the bloodstains occurred near the time of the murder. Further, the petitioner presented no evidence connecting Ferrer to the crime or the crime scene. Finally, as the habeas court stated, "[t]he petitioner's own testimony at the habeas trial supports the irrelevance of anything found inside of [the victim's] vehicle. . . . Nowhere in his testimony did the petitioner reference anything to do with the [victim's] vehicle, nor did he ever reference any 'unknown male' supposedly being in the vehicle with them or at the scene of the shooting."

Thus, because the petitioner cannot establish a connection between the murder and the bloodstains, the evidence of the CODIS match does not satisfy *Brady*'s materiality test. See *State* v. *Rosa*, supra, 196 Conn. App. 504;[11] see also *Carmon* v. *Commissioner of Correction*, 114 Conn. App. 484, 492, 969 A.2d 854 (Counsel was not deficient for failing to investigate cartridge box that "was not found at the crime scene, and there was no evidence as to when or how it was deposited in the area . . . . The box was empty, the caliber of the ammunition that had been contained in that box was unknown, there was no eyewitness testimony that the shooter had been seen taking cartridges from a box, and there was no testimony or evidence linking that box to the crime scene." (Footnote omitted.)), cert. denied, 293 Conn. 906, 978 A.2d 1108 (2009).

Accordingly, we conclude that the habeas court properly determined that the petitioner failed to establish materiality and, therefore, did not abuse its discretion by denying the petition for certification to appeal as to this claim.

B

Finally, the petitioner claims that the state committed a *Brady* violation by failing to disclose, as impeachment evidence, certain testimony Browning gave in a separate, prior criminal trial, *State* v. *Holbrook*, Superior Court, judicial district of Fairfield, Docket No. CR-00-0163353-T (*Holbrook* case). We agree with the respondent that this claim is unreviewable because the habeas court correctly concluded that it was abandoned.

In his petition for a writ of habeas corpus, the petitioner alleged that his "due process rights in [the underlying criminal case] were violated because the state had information that [Browning], the only witness who put the petitioner at the scene of the crime, had previously testified in [the *Holbrook* case]. . . . At that time [Browning] admitted that he had lied under oath . . .

and said he would lie to protect himself. This information was not disclosed to trial or appellate counsel." At the habeas trial, the petitioner sought to admit the transcript of Browning's testimony in the *Holbrook* case as a full exhibit, but the court sustained the respondent's objection.[12] Following the trial, the petitioner did not address the claim in his posttrial brief and, therefore, presented no argument as to why the state's failure to provide the testimony violated his due process rights. In its memorandum of decision, the court deemed the claim abandoned, stating that "[t]he petitioner failed to address this issue at all in his posttrial brief" and citing *Walker* v. *Commissioner of Correction*, supra, 176 Conn. App. 856, to support its conclusion that the claim was abandoned.

"It is well settled that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . These same principles apply to claims raised in the trial court. . . .

"[T]he idea of abandonment involves both a factual finding by the trial court and a legal determination that an issue is no longer before the court, [therefore] we will treat this claim as one of both law and fact. Accordingly, we will accord it plenary review." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id.

As noted, in the present case the petitioner did not address this claim in his posttrial brief and provided no support for or reference to the claim in his habeas petition. Furthermore, the petitioner has not contested or addressed the court's conclusion that the claim was abandoned and has provided us with no reasons as to why the habeas court erred in so finding. On these facts, we conclude that the habeas court properly deemed the claim abandoned.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] Practice Book § 23-36 provides that "[a] party may, consistent with the rules of evidence, offer as an exhibit, or the habeas court may take judicial notice of, the transcript and any portion of the Superior Court, Appellate Court or Supreme Court record or clerk's file from the petitioner's criminal matter which is the subject of the habeas proceeding."

[2] In so ruling, the court stated: "I mean, here's the thing, counsel—and I get that there's a Practice Book section. And I'll put the record out this way. You can submit—and I know the Practice Book section allows the expanded record to be submitted. Here's my view and I've written on this. It is not my job as the judge to search through the evidence to find things that support any lawyer's claims. So, to the exten[t] you are admitting the underlying record, you will still need to point the court to the parts of that record that are relevant and you believe support the claims that you make

because otherwise I then step into the role of advocate or taking position for one side or the other as opposed to somebody saying to me, 'This particular piece of evidence, Your Honor, supports my claim of X.' So I don't know that I can stop you from saying I want the court as a matter of record to consider the underlying trial record. But, to the extent you believe any of that is relevant, you're going to want to address it. . . . [A]nything can be part of the record. What I'm telling is this is as I said it's not the court's job to sift through the record to find things. So to the extent that you're entering the exhibits from the underlying trial, that's great. Your job is going to be this particular piece of evidence, Judge, is relevant to my claim because X, not my job to look through the record and go, 'Oh, this is kind of neat; I think this is relevant,' or 'I think I should give them points for this.' That's all I'm saying. So, the record is what it is, and the record's always going to be what it is. It's counsel's job to marshal that evidence and to tell me how they are claiming it should be used. And just saying, 'Here's the record, Judge; I think the record as a whole supports my position.' That's not the court's job."

[3] Peter Valentin, a lecturer at the Forensic Science Department of the University of New Haven, testified as a forensic science expert on the petitioner's behalf. The habeas court specifically determined that his testimony "was neither compelling nor enlightening." See part III B of this opinion.

[4] "CODIS contains DNA profiles from unsolved crimes and compares them to known samples from convicted felons that are periodically added to the database. See, e.g., *State* v. *Webb*, 128 Conn. App. 846, 852–53 n.3, 19 A.3d 678, cert. denied, 303 Conn. 907, 32 A.3d 961 (2011)." *State* v. *Rodriguez*, 337 Conn. 175, 180 n.2, 252 A.3d 811 (2020).

[5] Valentin specifically testified: "[I]n the photograph on the right side of the image there is a large—there's a collection of blood adjacent to a baseball cap. That is inconsistent toward—it is not in the same position as the decedent was found or as he's photographed here. Additionally, there is a smaller blood stain in the vicinity of the decedent's left arm that also suggests some movement after the injury occurred. And then there's also some—there are additional stains in the vicinity of that what I would call a linear pattern near his arm that also are suggestive of movement."

[6] Specifically, Valentin testified that he "would have suggested to [trial] counsel that the distance that that bloodstain is from the cluster of activity for lack of a better way of describing it where [the victim's] body was located suggests that that stain has relevance because my assessment would be that there's essentially two ways for that bloodstain to get there or there's two sources for that blood. Either that blood is [the victim's] blood and it has been brought to that location twenty some odd feet away from the scene because it was on an object or that blood belongs to somebody who was bleeding at a time recently because the snow would suggest temporally when that would have occurred."

[7] In discussing another claim, the habeas court noted that evidence regarding the condition of the victim's body supported the state's theory at trial that the petitioner and Browning robbed the victim after he was killed.

[8] In addition, this testimony did not take into account the fact that the petitioner's trial counsel was not informed about the DNA match to the bloodstain; see part IV A of this opinion; nor did it contemplate the fact it was undisputed that the car had been destroyed by the time trial counsel started representing the petitioner.

[9] In making this argument, the petitioner points to information that his trial counsel would have discovered, had he conducted a "proper investigation." The habeas court, however, excluded the evidence purporting to establish what his trial counsel would have discovered. Although the petitioner notes in his principal appellate brief that "[i]nformation regarding what happened to the victim's car after it was impounded by the police was improperly excluded," he did not raise a claim of error with respect to this ruling on appeal.

[10] The court also determined that the petitioner failed to prove that his trial counsel's performance was deficient. Because we agree that the petitioner failed to prove prejudice, we need not consider the court's determination concerning trial counsel's deficient performance. See *Schuler* v. *Commissioner of Correction*, supra, 200 Conn. App. 617.

[11] The petitioner attempts to distinguish *Rosa*, arguing that the evidence in the present case "was definitely connected to the crime" because the car belonged to the victim while the sweatshirt in *Rosa* "was not connected to the crime" and that the state's case was not strong in the present case

while "there was strong evidence inculpating the defendant" in *Rosa*. These arguments are unavailing.

First, the fact that the vehicle belonged to the victim is not enough to connect it to the crime, as mere ownership and some proximity to the crime scene do not in and of themselves implicate the vehicle's involvement. Second, the court in *Rosa* determined that the sweatshirt was not connected to the case because of the collective facts. *State* v. *Rosa*, supra, 196 Conn. App. 504, 509. Similarly, in the present case, the collective facts result in a conclusion that the car is not connected to the case. Further, in *Rosa*, the "strong evidence inculpating the defendant" was only one factor of many bearing on the determination that the sweatshirt was not material to the case. Id., 509.

[12] The petitioner has not raised on appeal a claim that the court erred in excluding from evidence the transcript of Browning's testimony from the *Holbrook* case.

---