******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MARQUIS JONES *v.* STATE OF CONNECTICUT
## (AC 47824)

Cradle, C. J., and Moll and Keller, Js.

*Syllabus*

The petitioner appealed following the denial of his petition for certification to appeal from the trial court's judgment dismissing his petition for a new trial on the basis of newly discovered DNA evidence. The petitioner claimed, inter alia, that the court abused its discretion in denying his posttrial motion for permission to amend his petition to conform to the evidence presented at the trial on the petition. *Held*:

The trial court did not abuse its discretion in denying the petition for certification to appeal, as the petitioner failed to demonstrate that his claims involved issues that were debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions raised were adequate to deserve encouragement to proceed further.

The trial court did not abuse its discretion in denying the petitioner's motion for permission to amend his petition for a new trial, as there was nothing in the record to support the petitioner's argument that granting him permission to amend the petition would not cause a substantial delay of the trial on the petition or that he suffered an injustice by such denial.

Argued October 21, 2025—officially released February 17, 2026

*Procedural History*

Petition for a new trial following the petitioner's conviction of the crime of felony murder, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Hon. Dale W. Radcliffe*, judge trial referee; thereafter, the court denied the petitioner's motion for permission to amend the petition; judgment dismissing the petition; subsequently, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed*.

*Nicole Britt*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (petitioner).

*Rebecca R. Zeuschner*, deputy assistant state's attorney, with whom, on the brief, was *Joseph Corradino*, state's attorney, for the appellee (respondent).

*Opinion*

CRADLE, C. J. The petitioner, Marquis Jones, appeals following the denial of his petition for certification to appeal from the trial court's judgment dismissing his petition for a new trial based on newly discovered evidence. On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification to appeal and improperly denying his posttrial motion for permission to amend his petition for a new trial to conform to the evidence presented at the hearing on that motion. We conclude that the court did not abuse its discretion in denying the petition for certification to appeal and, accordingly, dismiss the appeal.

This court set forth the following facts, which the jury reasonably could have found, in the petitioner's direct appeal from his conviction. "On the evening of December 26, 2002, the eighteen year old victim, accompanied by his cousin, Sam Moore, attended a party at a club in Bridgeport. The [petitioner] was at the club at the same time as the victim and Moore. After leaving the club, the victim and Moore went to a nearby restaurant. The [petitioner], who was armed with a gun, arrived at the same restaurant at approximately 1 a.m. While there, the [petitioner] learned that the victim and Moore were interested in purchasing marijuana. The [petitioner] told an acquaintance, Gary Browning, that the victim and Moore had money and that he wanted to rob them. Browning arranged to sell marijuana to the victim and led him to a nearby backyard to complete the sale. Thereafter, the [petitioner] approached the victim from behind and stated: 'You know what time it is, run that shit.' As Browning walked away from the victim, the [petitioner] shot the victim in the back of the head and took money and drugs from him. The gunshot caused the victim's death. The victim's body was found on the snow coated ground the next morning." (Footnote omitted.) *State*

v. *Jones*, 135 Conn. App. 788, 791, 44 A.3d 848, cert. denied, 305 Conn. 925, 47 A.3d 885 (2012).

The petitioner was arrested on June 4, 2008.[1] On May 28, 2010, following a jury trial, the petitioner was convicted of felony murder. He was sentenced to a total effective sentence of forty years of incarceration. Id., 790 n.1. This court affirmed the judgment of conviction on direct appeal. Id., 806.

In May, 2013, the petitioner filed a petition for a writ of habeas corpus, which he later amended, wherein he alleged, inter alia, that his criminal trial counsel was ineffective and his rights to due process and a fair trial were violated by the failure of the state to disclose material evidence that was favorable to the defense in that a "hit notification" generated by the Combined DNA Index System (CODIS)[2] database identifying the DNA profile of Rafail E. Ferrer as consistent with the DNA profile obtained from a sample taken from a bloodstain in the victim's car was sent to the agencies that investigated and prosecuted the crime, specifically, the police department, the prosecutor, and the major crimes unit, but not to the petitioner's trial counsel. He further alleged that the evidence was material to a third-party culpability defense. Following a two day trial, the habeas court, *Newson, J.*, issued a memorandum of decision in which it denied the petitioner's habeas petition. In so doing, the habeas court held, inter alia, that the DNA evidence at issue was not material to the petitioner's defense. The petitioner appealed to this court following the denial of

[1] The record reflects that Moore signed a written statement on December 27, 2002, in which he averred that he did not see the victim after the victim left the restaurant. On July 11, 2008, Moore testified at the probable cause hearing that he met the victim shortly after the victim left the restaurant and that the petitioner shot and killed the victim. Moore did not testify at the petitioner's criminal trial.

[2] "CODIS contains DNA profiles from unsolved crimes and compares them to known samples from convicted felons that are periodically added to the database." *State* v. *Rodriguez*, 337 Conn. 175, 180 n.2, 252 A.3d 811 (2020).

his petition for certification to appeal from the denial of his habeas petition. See *Jones* v. *Commissioner of Correction*, 212 Conn. App. 117, 274 A.3d 237, cert. denied, 343 Conn. 933, 276 A.3d 975 (2022).

In November, 2019, while the petitioner's habeas action was pending before the habeas court, the petitioner filed the petition for a new trial underlying this appeal "based on the availability of newly discovered DNA evidence that was not available to [the petitioner] at the time of the original trial." Specifically, the petitioner again alleged that two car keys were found by the victim's body, the car to which these keys belonged was located nearby and there were what appeared to be bloodstains on the front seat. A search warrant was executed for the vehicle, and a sample of the bloodstained upholstery was sent to the state forensic laboratory for testing, which eliminated the victim as a contributor and, in November, 2008, there was a CODIS "hit notification" to Ferrer. The petitioner alleged that this information was not disclosed to the defense until December, 2018. The petitioner asserted that the newly discovered evidence was "exculpatory, material to the question of who committed the crime at issue, and likely would have produced a different result had such evidence been presented at [the petitioner's] original trial." The respondent, the state of Connecticut, filed an answer essentially leaving the petitioner to his proof on the allegations of his petition, and asserted, by way of special defense, that the petitioner's claim was barred by the doctrines of res judicata and collateral estoppel. The petitioner denied the respondent's special defenses.

The hearing on the petition for a new trial commenced on October 28, 2021. On that day, the court, *Hon. Dale W. Radcliffe*, judge trial referee, was informed by the parties that the DNA evidence that was the subject of the petition for a new trial also was the subject of the

petitioner's habeas petition, the petitioner appealed to this court from the denial of his habeas petition, and that appeal was still pending as of that date. Although the petitioner initially rested his case that day, his counsel asked the court to keep the evidence open because he had not yet been able to obtain the record of the petitioner's criminal trial, which he sought to introduce into evidence. The court agreed, at that time, to "leave the evidence open" and directed the parties to contact the caseflow coordinator to schedule a date to continue the trial. The court thereafter issued an order stating: "The [petitioner's appeal from the denial of his petition for a writ of habeas corpus] is scheduled for argument in the Appellate Court on January 11, 2022. The result of that appeal will have a bearing on this matter, given the fact that the [habeas] court . . . considered the claim of [the] DNA evidence in the denial of the habeas petition. A conflict between two proceedings, determining the same issues between the same parties, must be avoided."

On April 26, 2022, this court affirmed the judgment of the habeas court. Pertinent to the petitioner's petition for a new trial, this court agreed with the habeas court's conclusion that the DNA evidence was not material to the petitioner's defense.[3] *Jones* v. *Commissioner of Correction*, supra, 212 Conn. App. 143–44.

---

[3] This court explained, inter alia: "The car that contained the bloodstains was not found at the crime scene but on a nearby street. There is no evidence that the victim or anyone else associated with the murder was in or near the car that night. There is no evidence establishing how long the car had been parked there. There is no indication that the victim's murder is connected to the victim's car or that the blood was left during or as a result of the murder—indeed, there was no evidence to suggest that the bloodstains occurred near the time of the murder. Further, the petitioner presented no evidence connecting Ferrer to the crime or the crime scene. Finally, as the habeas court stated, '[t]he petitioner's own testimony at the habeas trial supports the irrelevance of anything found inside of [the victim's] vehicle. . . . Nowhere in his testimony did the petitioner reference anything to do with the [victim's] vehicle, nor did he ever reference any "unknown male" supposedly being in the vehicle with them or at the scene of the shooting.' " *Jones* v. *Commissioner of Correction*, supra, 212 Conn. App. 143–44.

On November 30, 2022, the hearing on the petitioner's petition for a new trial reconvened. The petitioner called Moore to testify. During his testimony, Moore testified that he was with the petitioner when he heard the shots that killed the victim and that, therefore, he did not believe that the petitioner killed the victim. Moore alluded to being coerced by law enforcement to sign a statement to the contrary several years earlier.[4] After Moore testified, the court admitted into evidence Moore's written statement from 2002 as a prior inconsistent statement. The court also admitted into evidence the transcript of Moore's testimony from the probable cause

---

[4] During Moore's testimony, the following colloquy occurred:

"[The Petitioner's Counsel]: Did you give a statement to the police related to the killing [of your cousin]?

"[Moore]: Nah. The cops—the cops came, (indiscernible) they took my [cousin's] car. They started trying to get me to talk to them. I wouldn't talk to them. They kept telling me that [the petitioner] made a statement towards me, that (indiscernible) made a statement. Listen, I'm going to tell you what I told them back [then]. I don't want nothing to do with this. I didn't come to his trial. They gave me fifteen—they gave me eight more years because I didn't come to his trial. I was supposed to get eight years; I end up doing fifteen years in prison because I didn't come to this [man's] trial. And they tried to force me to come to this [man's] trial. I didn't come. They—they kept forcing me to talk to them. I kept trying not to talk to these people. They kept trying to force me to talk to them about this case. Listen, man, I been saying nothing about this shit. I been trying—I'm just trying to be left alone so I don't get no more trouble. They took my [cousin] (indiscernible) and get fifteen years, man. And I did fifteen years in prison because I wouldn't talk on this man. I don't want nothing to do with this. . . . I—listen, I know my [cousin is] gone. That's it. I don't know nothing else. That's what I keep telling them. And they keep trying to switch this shit and turn this shit and keep following all of me. . . . I know I'm supposed to get eight years in a case back in 2004. . . . I was vetted to do a deal for eight years and try to get me to come to this [man's] trial. I didn't want to come. Next thing I know, my charge got upped to attempted murder and I got fifteen years. I do not want nothing to do with this. . . .

"[The Petitioner's Counsel]: [C]an I show you a statement; can you review it for me?

"[Moore]: Listen, man, there's no—I'm not getting involved.

"The Court: Well, the question, Mr. Moore, was whether or not you had given a statement in this matter.

"[The Petitioner's Counsel]: Can you review that for me, please?

"[Moore]: They were—on the—on the day in question, I gave a verbal statement. I gave a verbal statement. Then, the cops, they transcribed it.

hearing in 2008.[5] After the parties rested their respective cases, the court heard closing arguments and ordered the parties to file simultaneous proposed findings of fact and conclusions of law on December 28, 2022.

On December 27, 2022, just one day before the parties' posttrial briefs were due to be filed, the petitioner filed a motion for permission to amend his petition for a new trial, pursuant to Practice Book § 10-62,[6] to con-

They asked me to sign it. My mother came and got me. I left. Listen, I do not want nothing to do with this. I been telling them that since 2002. . . .

"The Court: [D]id you sign a statement on the day—

"[Moore]: Yeah. I had no choice.

"The Court: And is that the statement that you signed? Do you want to take a look at it?

"[Moore]: I'm not even looking over it, man. I don't want to refresh old wounds. I don't want to get into it. And I don't want to say nothing that's going to incriminate me.

"The Court: We just want you to tell us whether that's your signature—whether you actually signed it.

"[Moore]: I'm not sure. . . . I plead the fifth, man. I'm not going to get involved in it out of fear, man. I got time right now. . . . I don't want—if you want—if you all want to get honest, man, I don't think [the petitioner] killed my [cousin]. . . . I saw [the petitioner] that night. I'm tired—I keep telling them, my statement been the same thing. I don't care about criminal buying trouble for something that I don't think they did. I never been—I ain't no motherfucking rat, and I'm just telling the truth. It ain't rat, it no snitching, they just the truth. What's right is right. I saw that man on the side of the Chinese store. I ran into [the petitioner] and I kept telling Detective [Hector] Teixeira that. He kept switching my words up. I ran into [the petitioner]; it was dark. . . . I heard the shots when I was near [the petitioner]. I was near him. He came out the back near a house. I walked right up to [the petitioner] and I asked him did he see my [cousin]. Me—me and [the petitioner] were staring at each other. It was an aggressive standoff. We was both young. It was an aggressive standoff. We was right there like this looking at each other. And I—I heard two shot[s] go off. So, if you asking me, if you asking Samuel Leroy Moore, I do not believe [the petitioner] killed [the victim]."

[5] Counsel for the petitioner later conceded that Moore's testimony at the probable cause hearing was inconsistent with his original written statement. Moore did not testify at the petitioner's criminal trial. Detective Hector Teixeira also did not testify at the petitioner's criminal trial.

[6] Practice Book § 10-62 provides: "In all cases of any material variance between allegation and proof, an amendment may be permitted at any stage of the trial. If such allegation was made without reasonable excuse, or if the adverse party was actually misled thereby to his or

form to the evidence presented at trial.[7] The petitioner represented that "[t]he proposed amended petition clarifies and focuses the procedural history and includes an additional claim as a basis for a new trial related to the testimony of [Moore] at the November 30, 2022 hearing on the petitioner's petition for [a] new trial. Counsel for the [respondent] objects to this request to amend the pleadings." Specifically, the petitioner asserted: "At the November 30, 2022 hearing, [Moore] surprised the undersigned counsel by offering a passionate recantation of his probable cause testimony and explained that he had fabricated a statement and his probable cause testimony against the petitioner at the probable cause hearing in response to being pressured by [Detective] Hector Teixeira of the Bridgeport Police Department. Moore's testimony also suggested that he was either retaliated against for failing to testify at the petitioner's criminal trial, or that he was denied an inducement because of that failure, in that he testified that he received eight additional years of his sentence as a result of his refusal to testify against the petitioner at his trial. This new testimony significantly alters any close consideration of the petitioner's case. It also reveals that additional exculpatory evidence had been concealed by the [state] at both his criminal trial and afterward up until the time of [Moore's] 2022 testimony."[8] The petitioner argued:

---

her prejudice in maintaining the action or defense upon the merits, or if such amendment requires postponement of the trial or additional expense to the adverse party and this is shown to the satisfaction of the judicial authority, such amendment shall be made only upon payment of costs or upon such terms as the judicial authority may deem proper; but in any other case, without costs. Immaterial variances shall be wholly disregarded."

[7] The petitioner also filed on that date a motion for extension of time to file posttrial briefs.

[8] In his proposed second amended complaint, which he filed with his motion for permission to amend, the petitioner alleged, inter alia:

"(51) Furthermore, [Moore's] testimony at the probable cause hearing was false in that [Moore] did not witness any robbery of the victim, nor did he see the petitioner with a gun in the vicinity of the crime scene, but rather his original statement to the police that he had not seen anything was true, and his subsequent statement and probable cause testimony came as a result of misinformation and pressure from law

"Granting this amendment will not work an injustice to the [respondent] for several reasons. First, while the testimony of [Moore] was perhaps unexpected at the November, 2022 trial, [the respondent] had previously been on notice that [Moore] initially gave a statement attesting that he had not witnessed the shooting, then made a statement that he had witnessed the petitioner participate in the shooting and testified consistently with that at the probable cause hearing, and that [Moore] had subsequently refused to cooperate at the criminal trial. Second, the petitioner's theory would be that [the respondent], directly or through the police, had concealed the facts related to [Moore's] testimony up until the time of the hearing on the [petitioner's petition] for [a] new trial. [The respondent] should not be able to argue injustice or prejudice where its own actions kept the information out of the possession of the petitioner at any earlier point. Third, any arguable 'injustice' to [the respondent] would pale in comparison to the injustice uncovered by the testimony presented by Moore. The finding of probable cause based solely upon the false testimony of a single witness, that morphed into a trial based upon the unreliable testimony of a single individual who was testifying for his own gain and very likely directly responsible for

enforcement, and the hope of a reduction in the sentence that he received in his own criminal matter.

"(52) The information contained in paragraph (51) is newly discovered evidence for purposes of [General Statutes] § 52-582 (a) which allows for a petition to be filed at 'any time' if it [is] based upon 'other newly discovered evidence.'

"(53) Whether or not the information included in paragraph (51) is newly discovered evidence for purposes of a petition for new trial, it is relevant to consideration of (A) the probability of the petitioner's success on a retrial, and (B) whether an injustice has been done.

"(54) The information contained in paragraph (51) had been fraudulently concealed from the petitioner by the [respondent] in that law enforcement officials had actual knowledge of the circumstances surrounding [Moore's] statement and testimony, and they knew or should have known that the information was fabricated by [Moore], and the [respondent] did not disclose that information to the petitioner.

"(55) Due to this fraudulent concealment, the time limitation period under . . . § 52-582 began to accrue only at the discovery of that concealed evidence, [General Statutes] § 52-595."

the death of the victim, and resulted in an unreliable conviction for the petitioner is a massive injustice if the petitioner's claim is proven. [The respondent] shares the same interest as the petitioner in ensuring that justice is done, even if that means reevaluating previously obtained convictions. Allowing this amendment will not bring about substantial delay to the trial because while the petitioner would ask for an opportunity to present additional evidence, the court could alternatively allow the amendment without accepting new evidence. While the undersigned is very mindful that the court has significantly accommodated the petitioner's presentation of evidence in this matter, the undersigned counsel feels compelled to make this request on behalf of the petitioner in the interests of justice and based upon his observations at the November 30, 2022 hearing." (Footnote omitted.) In his motion, the petitioner asked for "the opportunity to present limited evidence related to [Teixeira] and other evidence that would substantiate the testimony of [Moore] at the petition for [a] new trial." He represented to the court that "this would take up less than half a day of the court's time."

On January 27, 2023, the court held a hearing on the petitioner's motion for permission to amend his petition. At the hearing, the court began by recounting the history of the case and then addressed counsel for the petitioner, stating: "[I]t is your motion to extend time for filing of proposed findings of fact. It's also your motion to amend . . . the pleadings and essentially to change the theory of the case as pled and tried. I'll hear you on that." In support of his motion for permission to amend, counsel for the petitioner argued, inter alia: "[I]f the defense knew that Detective Teixeira had obtained a fabricated statement through police pressure, would an attorney, if an attorney knew that, present some theory based on that action at the trial to also undermine the testimony of Browning, who only said . . . what he said after talking

to Detective Teixeira after maybe the fifth or sixth time giving a statement."

In response to that argument, the court told counsel for the petitioner: "But that simply wasn't part of the evidence here." The court further explained: "I think I would be compelled to say at that point . . . that this issue was not brought to the court's attention. This individual didn't testify at the original trial. And nothing said by [Moore] here—this is not the first time that he's given an inconsistent statement. That was already known. That nothing here would rise to the level of . . . a new trial on that basis. I will be happy to decide that—that issue, even though it wasn't raised based on what I saw. But if you would rather proceed on the other issue and save that for a habeas action, you may do so. . . . I mean, that's the way I would be prepared to rule as far as that issue is concerned, particularly based on the four corners of the case as it was tried here. And I don't have before me a motion to reopen, and that would be highly problematic to begin with. . . . And that's really what you'd require here." The respondent then objected to the petitioner's motion and argued: "[W]e have had several days of trial before Your Honor. Evidence has been presented, arguments were made before Your Honor, and the evidence has . . . since been closed. I think to amend the petition at this point in time not only places [the respondent] at an unfair [dis]advantage because . . . we're adding an additional claim that was not really brought to light but I think it also . . . expands the universe in a way that neither party really was prepared to go forward." The court denied the motion for permission to amend the petition, noting that it was "filed posttrial . . . ."[9]

On June 22, 2023, the court filed a memorandum of decision wherein it dismissed the petitioner's petition for a new trial on the ground that, even if the petitioner's claim regarding the newly discovered DNA evidence was

[9] Specifically, the court explained:

"The Court: My intention would be at this point to deny the request for permission to amend and make a specific finding that I am not deciding at this point, and I'll have the—and . . . I am not deciding at this point

not barred by the doctrine of res judicata in that it was considered and rejected by the habeas court, that evidence was not material to the petitioner's defense at his criminal trial. The petitioner thereafter sought certification to appeal, which the court denied. This appeal followed.

On appeal, the petitioner does not challenge the court's judgment as it pertains to the newly discovered DNA evidence. Rather, the petitioner claims that the court abused its discretion in denying his motion for permission to amend his petition for a new trial to include a claim related to Moore's testimony[10] and denying his petition for certification to appeal. We are not persuaded.

"It is well established that we apply the abuse of discretion standard when reviewing a court's decision to

whether the failure to call [Moore] as a witness was fully and fairly litigated in the earlier proceeding because it was not the subject of this trial.

"[The Petitioner's Counsel]: And I think that I'm hearing the court pretty clear about the benefits to [the petitioner] of not having it halfway done in this proceeding . . . .

"The Court: I'm going to deny your motion for permission to amend the pleadings in that it was filed posttrial, and I'm going to specifically indicate, however, that I am not deciding based upon this motion or on the evidence presented in [this case] whether the issue of calling [Moore] as a witness at trial had been fully and fairly litigated, whether the statement—the alleged statement of [Teixeira] would constitute newly discovered evidence twenty years later; that would seem to be problematic, but nonetheless, I'm not making a decision on that.

"[The Petitioner's Counsel]: Understood, and it's appreciated. Thank you, Your Honor."

The court granted the petitioner's motion for an extension of time to file posttrial briefs and set a new date on which the parties would file simultaneous briefs.

[10]The petitioner argues for the first time on appeal that his second amended petition became the operative petition when the respondent did not file a written objection within fifteen days pursuant to Practice Book § 10-60 (a) (3). We decline to consider this argument because it was not distinctly raised before the trial court. See, e.g., *United Concrete Products, Inc.* v. *NJR Construction, LLC*, 207 Conn. App. 551, 579, 263 A.3d 823 (2021) ("Our appellate courts, as a general practice, will not review claims made for the first time on appeal. . . . [A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. . . . The requirement that [a] claim be raised distinctly means

deny a request for certification to appeal from a denial of a petition for a new trial. . . . Therefore, the threshold issue that we must now decide is whether the court abused its discretion in denying the petition for certification to appeal. *Lozada* v. *Deeds,* 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), establishes the framework for satisfying the criteria necessary to show an abuse of discretion. A petitioner satisfies that burden by demonstrating: [1] that the issues are debatable among jurists of reason; [2] that a court could resolve the issues [in a different manner]; or [3] that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Myers* v. *Commissioner of Correction*, 215 Conn. App. 592, 620, 284 A.3d 309 (2022), cert. denied, 346 Conn. 1021, 293 A.3d 897 (2023), and cert. denied, 346 Conn. 1021, 293 A.3d 897 (2023). In our review of whether the court abused its discretion in denying certification to appeal, we necessarily must examine the petitioner's underlying claim that the court improperly denied his motion for permission to amend his petition for a new trial to add a claim related to Moore's testimony. See id.

"A trial court's ruling on a motion of a party to amend its complaint will be disturbed only on the showing of a clear abuse of discretion. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. [An appellate] court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [petitioner's] burden in this case to demonstrate that the trial court clearly abused its discretion. . . .

"[Pursuant to Practice Book § 10-62] [a] trial court may allow, in its discretion, an amendment to pleadings before, during, or after trial to conform to the proof. . . . Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing

that it must be so stated as to bring to the attention of the court the precise matter on which its decision is being asked." (Internal quotation marks omitted.)).

parties and the negligence, if any, of the party offering the amendment. . . . The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial. . . . The trial court is in the best position to assess the burden which an amendment would impose on the opposing party in light of the facts of the particular case." (Citation omitted; internal quotation marks omitted.) *Zhuleku* v. *Naugatuck Valley Radiology Associates*, 232 Conn. App. 143, 152–53, 336 A.3d 101, cert. denied, 352 Conn. 907, 335 A.3d 846 (2025).

"While our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made seasonably. . . . The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial." (Internal quotation marks omitted.) *KDM Services, LLC* v. *DRVN Enterprises, Inc.*, 211 Conn. App. 135, 140, 271 A.3d 1103 (2022).

As noted herein, the petitioner filed his petition for a new trial in November, 2019, on the basis of newly discovered DNA evidence pertaining to a previously unidentified individual that was collected from a bloodstain from the victim's car. Three years later and almost thirty days after the close of evidence, the petitioner sought to add an entirely new claim that was unrelated to his claim regarding the DNA evidence. After Moore expressed his belief that the petitioner did not kill the victim, neither party made any further inquiry of Moore, and no further record was developed pertaining to his testimony. The petitioner did not request a continuance or ask the court to keep the evidence open to further develop a claim related to Moore's testimony. Although the petitioner suggested in his motion that only one-half day would be necessary to present further evidence to support his proposed amended petition, he did not file a motion to reopen the evidence or provide an estimate

as to how long it would take to investigate and prepare that new claim for the presentation of that evidence to the court. The record also does not reflect that there was any inquiry of the respondent as to how long it would need to investigate and prepare to defend the petitioner's proposed amended petition. There simply is nothing in the record to support the petitioner's argument that granting him permission to amend his petition would not cause a substantial delay of the trial.

Moreover, as noted, the petitioner argued in his motion for permission to amend that the proceeding would not be unduly delayed by the addition of the new claim because the court could grant the motion for permission to amend and decide it without the presentation of additional evidence. The court stated at the hearing on the motion for permission to amend that the minimal record pertaining to the petitioner's proposed amended petition did not support a new trial. In other words, the court told the petitioner that it would deny a petition for a new trial based on his proposed amendment, but, rather than consider Moore's testimony and foreclose in its entirety any claim as to its materiality to the petitioner's defense, the court suggested that the petitioner might be able to use that testimony in a new proceeding. To that end, the court specifically noted, for the petitioner's benefit, that it was not considering the claim pertaining to Moore's testimony. On the record before us, we would be hard-pressed to conclude that the petitioner suffered an injustice by the court's denial of his motion for permission to amend his petition for a new trial.

On the basis of the foregoing, we conclude that the court did not abuse its discretion in denying the petitioner's motion for permission to amend his petition for a new trial. We therefore further conclude that the petitioner has failed to demonstrate that the issues raised are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions raised merit encouragement to proceed further.

Accordingly, the court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.